UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| ELMER D. CHARLES, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CAUSE NO. 3:17-CV-501-PPS |
| vs. | ) | |
| | ) | |
| RON NEAL, et. al., | ) | |
| | ) | |
| Defendants. | ) | |

OPINION AND ORDER

Elmer D. Charles, Jr. a *pro se* prisoner being held at the Indiana State Prison, is a

biological male, but identifies as a female. For clarity, I will utilize female pronouns

where appropriate. Charles has filed a complaint under 42 U.S.C. § 1983 against Ron

Neal, the Superintendent of the Indiana State Prison (ISP), and Robert Carter,

Commissioner of the Indiana Department of Corrections (IDOC).

Charles is a biological male but suffers from Klinefelter's Syndrome. Here is how

Klinefelter's Syndrome has been described: "Most men inherit a single X chromosome

from their mother, and a single Y chromosome from their father. Men with Klinefelter

syndrome inherit an extra X chromosome from either father or mother; their karyotype

is 47 XXY. Klinefelter is quite common, occurring in 1/500 to 1,000 male births. Boys

with Klinefelter are usually born with male genitals that look like other boys. But at

puberty, they may not virilize very strongly – they may not develop much body hair, or

they may experience breast development . . .. Although most boys with Klinefelter

1

Syndrome grow up to live as men, some do develop atypical gender identities, and some do develop female gender identities." Intersex Society of North America, Klinefelter Syndrom, http://www.isna.org/faq/conditions/klinefelter (last visited August 25, 2017). Charles tells me that she also suffers from Gender Identify Disorder (GID) which occurs when there is a conflict between a person's physical gender and the gender he or she identifies with. *See* Medline Plus, Gender dysphoria, https://medlineplus.gov/ency/article/001527.htm (last visited August 25, 2017).

Charles has sued the ISP Superintendent and IDOC Commissioner based on how she is being treated at ISP. Although there are some disturbing allegations about what is alleged to have happened to Charles while she was previously incarcerated at Wabash Valley, she has not sued anyone from that institution.

Pursuant to 28 U.S.C. § 1915A, I must review a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. Under federal pleadings standards, the plaintiff "must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to [him] that *might* be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) (emphasis in original). Instead, the plaintiff must provide sufficient factual matter to state a claim that is plausible on its face. *Ray v. City of Chicago*, 629 F.3d 660, 662-63 (7th Cir. 2011).

First, Charles complains that the defendants are allowing male correctional

officers to conduct strip searches of her. Charles complains that this forces her to expose

her breasts to male guards, which is traumatic since she is a victim of past sexual

assaults. While I sympathize with Charles' past experiences, there is nothing improper

about male guards conducting a strip search of her. In a typical situation, female guards

are permitted to conduct strip searches of male inmates.

> [F]emale guards are . . . bound to see the male prisoners in states of undress. Frequently. Deliberately. Otherwise they are not doing their jobs. . . .. [F]emale guards are entitled to participate in the normal activities of guarding, including pat-down searches of male inmates.

*Johnson v. Phelan*, 69 F.3d 144, 146 (7th Cir. 1995). Since female guards have the authority

to see male inmates fully naked and to conduct searches for the security of the jail, it

logically follows that male guards have the authority to see Charles naked and to

conduct strip searches of her as well. Charles does not allege that the strip searches are

being performed for any impermissible purpose. *See King v. McCarty*, 781 F.3d 889, 897

(7th Cir. 2017) (noting that strip searches can violate the Eighth Amendment if they are

motivated by a desire to harass and humiliate rather than by a legitimate justification).

Therefore, this allegation, as currently stated, does not state a constitutional claim. If

however the searches of her are being done for reasons unrelated to a legitimate

penological purpose, then a claim may be stated. But at present there is no allegation of

that.

Similarly, Charles complains that her strip searches, use of the bathroom,

showering and changing of clothes are being viewed on camera by male guards.  She

wants all of those activities to be private and unmonitored. However, for prison safety, male guards are entitled to be present or monitor these activities. *Courtney v. Devore*, 595 Fed Appx. 618, 619-20 (7th Cir. 2014) (citing *Johnson v. Phelan*, 69 F.3d 144 (7th Cir. 1995)).

It's worth noting that many of Charles' concerns surrounding male guards at ISP seeing her naked stem from her previous stay at Wabash Valley Correctional Facility. As I mentioned at the outset, Charles alleges some egregious, indeed criminal, behavior on the part of the guards and fellow inmates at Wabash. She says she was sexually assaulted by other inmates no less than 38 times while being held at Wabash Valley and on "October 18, 2005, she was violantly[sic] sexually assaulted by four correctional officers." ECF 1 at 4. Charles apparently fears for her safety at ISP based on her experiences at Wabash. Certainly, if Charles were suing those four Wabash prison guards for sexually assaulting her, that would obviously state a claim. *Washington v. Hively*, 695 F.3d 641, 643 (7th Cir. 2012).

But that does not seem to be the case. Charles' allegations about past sexual abuse seem to be included in the complaint simply to validate her present concerns about male guards at ISP. Notably, Charles has not named any of the four guards as defendants in this case. And, while she would certainly have a valid claim against those four officers, this does not appear to be the proper venue to pursue those claims. The abuse allegations stem from when Charles was housed at Wabash, which is within the geographical boundaries of the United States District Court for the Southern District of

4

Indiana. Because all four guards are located in the Southern District of Indiana and the alleged abuse occurred in that district, if Charles intends to pursue these claims, she should file a lawsuit in United States District Court for the Southern District of Indiana.

Next, Charles complains that she is not permitted to "have make-up, female hygiene items thats [sic] allowed at the Indiana Women Dept of Corrections." ECF 1 at 2. The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008). In evaluating an Eighth Amendment claim, the Court conducts both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The objective prong asks whether the alleged deprivation or condition of confinement is "sufficiently serious" so that "a prison official's act results in the denial of the minimal civilized measure of life's necessities." *Id.* Although "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), inmates are entitled to adequate food, clothing, shelter, medical care, bedding, hygiene materials, and sanitation. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). On the subjective prong, the prisoner must show the defendant acted with deliberate indifference her health or safety. *Farmer*, 511 U.S. at 834.

It is unclear what, exactly, Charles is seeking but being denied. While Charles would certainly prefer to have all the traditional accoutrements that women have at a woman's prison, the constitution does not require it. There is nothing in the complaint that plausibly alleges Charles is being denied any of life's necessities. Thus, the

complaint fails to state a claim here, too.

Next, Charles complains that she is not receiving sex reassignment surgery to deal with her Klinefelter's syndrome and GID. Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjecting component by showing: (1) her medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). On the subjective prong, the plaintiff must establish that the defendant "acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005).

Here, I have no doubt that Klinefelter's syndrome and GID are serious medical conditions. *Meriwether v. Faulkner*, 821 F.2d 408, 413 (7th Cir. 1987). However, Charles has not alleged that anyone has been deliberately indifferent to either of these conditions. Indeed, she admits that she is currently being treated for them and taking female hormone therapy. ECF 1 at 2, ¶6. There are no allegations that this treatment is inadequate or ineffective. While Charles would prefer to have sex reassignment

surgery, she does not have the right to any particular type of treatment for her conditions. *Greeno*, 414 F.3d at 654-55.

Next, Charles wants to be transferred to a woman's prison. Typically, prison officials are afforded "wide-ranging deference" in the day-to-day operations of a correctional facility. *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). Thus, prison officials have authority to house an inmate in any correctional facility they deem appropriate, and an inmate has no constitutional right to be housed in a particular correctional facility or in the facility of her choosing. *See Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996). Nevertheless, Charles cites to what appears to be IDOC policy regarding where to house transgender or intersex inmates. ECF 1-1 at 6. That policy explains that assignments are made on a case-by case basis and should not be solely determined by the offender's "external genital anatomy." *Id.* However, Charles does not explain how any prison officials were deliberately indifferent to this policy. In fact, Charles does not even explain why she was classified to be housed at ISP, instead of at a woman's prison. There is a good chance it has something to do with the fact that she previously raped a woman. ECF 1-1 at 5. In any event, Charles has not plausibly alleged that her housing classification is unconstitutional.

As a final matter, I need to comment on the proper defendants. Charles has only sued the ISP Superintendent and IDOC Commissioner. These could be proper defendants if Charles is claiming that she is being harmed by one or more unconstitutional policies or if these defendants personally harmed her. However, where

Charles is alleging harm by the acts of other individuals - such as the denial of medical treatment - she must identify which defendants were personally responsible for the alleged constitutional violations. This is because section 1983 creates a cause of action for damages based on personal liability. A plaintiff must show the defendant's personal involvement or participation, or direct responsibility for the conditions of which she complains, *Starzenski v. City of Elkhart*, 87 F.3d 872, 879 (7th Cir. 1996), by demonstrating a causal link between the defendant's conduct and the plaintiff's injury. *Benson v. Cady*, 761 F. 2d 335, 339 (7th Cir. 1985). Section 1983 defendants "are responsible for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). The doctrine of *respondeat superior*, which allows an employer to be held liable for subordinates' actions in some types of cases, has no application to § 1983 actions. *Moore v. State of Indiana*, 999 F.2d 1125, 1129 (7th Cir. 1993). In the event Charles files an amended complaint, she will be required to name the defendants who were personally involved in harming her.

As explained, Charles has failed to allege a plausible claim against Ron Neal or Robert Carter. Thus, the complaint fails to state a claim. Nevertheless, she will be permitted to do so if she believes that she can address the deficiencies noted above. *Luevano v. Wal-Mart*, 722 F.3d 1014 (7th Cir. 2013).

ACCORDINGLY:

(1) The Clerk is **DIRECTED** to place this cause number on a blank Prisoner Complaint form and send it to Elmer Charles, Jr.;

(2) Elmer Charles, Jr., is **GRANTED** until October 10, 2017, to file an amended complaint; and

(3) Elmer Charles, Jr., is **CAUTIONED** that if she does not respond by that deadline, this case will be dismissed without further notice pursuant to 28 U.S.C. § 1915A.

ENTERED: September 14, 2017

 /s Philip P. Simon
Judge
United States District Court